[Crim. No. 74. First Appellate District.—May 27, 1907.]

# THE PEOPLE, Respondent, v. FONG CHUNG, alias FAT JIM, Appellant.

CRIMINAL LAW—RAPE—TRIAL—CONTINUANCE—ABSENCE OF MATERIAL WITNESS—INSUFFICIENT ADMISSION BY DISTRICT ATTORNEY.—Upon a prosecution for rape, it was error for the court to refuse to postpone the trial, on motion of the defendant, for the absence of a material witness, who had been duly served with subpoena, but who was too ill to attend, and whose testimony set forth in the affidavit would prove an alibi at the time of the alleged crime, merely because of an admission by the district attorney that the witness would testify to everything that is material in the affidavit without admitting the truth of the facts set forth therein. Such action of the court involves a denial of the constitutional right of the defendant to have the witness orally examined in court.

ID.—EVIDENCE—VENEREAL DISEASE OF PROSECUTRIX—ABSENCE OF DISEASE OF DEFENDANT.—Upon the trial of the prosecution for rape, it was error for the court to refuse to permit the defendant to prove that at the time of the alleged offense the prosecutrix was afflicted with venereal chancroids; that she had had promiscuous intercourse with a great number of other persons before that time, and that the defendant has never in his life had that disease.

ID.—FAILURE TO MAKE OUTCRY—IMPRISONMENT OF WITNESS.—It was error for the court to refuse to permit the defendant to prove that the girl made no outcry, and that she was kept under imprisonment, and was allowed to see no one but the sheriff and his deputies, and the district attorney and his deputies and detectives. Such testimony should have been allowed as affecting the credibility of the witness.

ID.—ERROR IN ALLOWING INSULTING CROSS-EXAMINATION—FACTS IMPLIED WITHOUT PROOF.—It was error to allow the district attorney to ask indecent, improper and insulting questions on cross-examination of a witness for defendant as to particular wrongful acts, tending to degrade his character, and to create the belief that defendant was in the habit of seducing young girls, without any proof thereof. The fact that the witness denied that the facts involved in the questions were true did not cure the error in allowing questions in violation of sections 2051, 2065 and 2066 of the Code of Civil Procedure. These provisions apply alike to the protection of all witnesses.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. J. R. Welch, Judge.

The facts are stated in the opinion of the court.

John W. Sullivan, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

COOPER, P. J.—The defendant is charged in the indictment with the crime of rape, in having had sexual intercourse, on the twenty-sixth day of September, 1905, with Lillie Ida Davis, an unmarried female under the age of sixteen years.

After trial the jury returned a verdict of guilty, and judgment was thereupon entered, sentencing defendant to a term of ten years in the state prison.

The facts disclosed by this record are revolting. The party upon whom the rape is alleged to have been committed was just thirteen years of age, and had an elder sister, Eliza, who was fifteen. It seems, with the apparent knowledge and consent of the father and mother, that these two young girls were and had been in the habit of having sexual intercourse with Chinamen and other parties at their home, in which the father and mother and the smaller children of the family resided. For this they received small sums of money and presents. There were six other cases of alleged rape upon these sisters, charged to have been committed by different individuals, pending and set for hearing at the time this case was called. Three of these were apparently against Chinamen, and three of them against white men or boys. The sisters were each suffering from venereal disease. While it is not clear that such disease existed at the time of the alleged crime by this defendant, it is clear that it existed, and both sisters were afflicted with it when examined a short time afterward. The offense is statutory, and no matter how depraved was the girl upon whom the act is alleged to have been committed, nor how many others were equally guilty, the defendant would be held none the less amenable to the law for his acts, if the evidence supported the verdict and no

error appeared of record; but as the offense charged is one that of itself creates a feeling of prejudice and hostility in the minds of the jury, particularly in the case of a Chinaman, the court will look carefully into the record to see that all the substantial rights of the defendant were given him by the trial court.

In this class of cases, as well as in all others, a defendant should be fully protected during the trial in all his rights, and if he cannot thus be convicted, he should not be convicted at all.

The first contention made by defendant is that the court erred in refusing to postpone the trial for a reasonable time on account of the absence of a material witness, and the contention must be sustained. When the case was called for trial the defendant's counsel answered that he was not ready, and moved for a continuance on account of the absence of Charlie Yan Tie, a material witness for defendant. In support of the motion counsel for defendant offered and read the affidavit of defendant, which stated in substance that Charlie Yan Tie was a material witness, without whose testimony he could not safely proceed to trial; that a subpoena had been duly issued and served upon the said witness several days before the day set for trial; that the witness was seriously ill, under the care of a physician, and unable to appear in court; that the defendant could prove by said witness, if present, and expected to prove by him, that defendant was not in the presence of said Lillie Ida Davis at the time of the commission of the alleged crime; that the defendant bought from said witness two dress skirts and sold the same at a profit to the two Davis sisters, and that the defendant's reputation for truth, veracity, peace and quietude is good; that defendant could not prove the said facts by any other witness.

In support of said motion defendant's counsel testified that before the trial, and immediately upon learning of the illness of the said witness, he notified the district attorney that the witness was ill, and that defendant could not safely go to trial on the day set. Dr. Trueman testified that he was attending the witness Charlie Yan Tie, and that the witness was in bed very ill, with a high fever, suffering from blood poisoning, and would not be out of bed for at least

three weeks, and that it would be dangerous for said witness to attend court.

Upon the above showing the judge remarked to the district attorney that in his opinion the continuance would have to be granted. The district attorney thereupon remarked, ''We will concede that this Chinaman will testify to anything in that affidavit—everything that is material.'' Thereupon the court denied the continuance, and to this ruling the defendant duly excepted.

It must be borne in mind that no question was raised as to the sufficiency of the facts as stated in the affidavit. The ruling of the court was based squarely upon the theory that the admission of the district attorney to the effect that the absent witness, if present, would testify to anything in the affidavit, answered the purpose and obviated the necessity of a continuance; that the statements in the affidavit could be taken in lieu of the evidence of the witness. Such is not the law. The constitution of the state (article I, section 13) gives a defendant the right to have the process of the court to compel the attendance of witnesses in his behalf. It is the duty of the court, when due diligence has been used, and it appears that the application is made in good faith, and the evidence is material, to continue the case for a reasonable time so that the case may be fairly tried on its merits.

In the early case of *People* v. *Diaz*, 6 Cal. 248, it was held that the admission of the district attorney that the witness, if present, would have testified as set forth in defendant's affidavit, was not sufficient, but that in order to obviate the necessity of a continuance, the district attorney should have admitted the truth of the facts set forth in the affidavit. The court said: ''The materiality of the evidence having been shown, it was the duty of the court, in the absence of evidence tending to discredit or throw suspicion on the application to postpone the cause, to afford the prisoner reasonable time to secure the attendance of his witness. It was not sufficient that the district attorney agreed that the witness would have deposed to certain facts, if present; he should have admitted the truth of the facts absolutely. It was the right of the accused to have his witnesses orally examined in court; and this right could not be frittered away by compelling him

to go to trial in their absence without the benefit of their testimony upon a statement of what the evidence would be, subject to impeachment. The value of oral testimony over all other is too well understood to suppose for a moment that such declarations will have the same weight on the minds of the jury as the testimony of the witness if he had been examined before them in open court.''

The above case has never been overruled or modified by any case to which our attention has been called. It has been followed in *Graham* v. *State*, 50 Ark. 167, [6 S. W. 721], and in *Newton* v. *State*, 21 Fla. 70. Its reasoning is logical. The district attorney could not by a concession as to ''this Chinaman'' deprive the defendant of the benefit of a substantial right. It was the time and the occasion when his each and every right should have been guarded both by the district attorney and the court. It was the first continuance asked. There was no question raised as to the good faith of the defendant in making the application. If the question as to the good faith of the application, or the sufficiency of the matters and things stated in the affidavit, had been raised, and sufficient showing made so as to appeal to the discretion of the court, the question would be different; but here we have squarely presented the ruling of the court based upon the statement of the district attorney quoted above. The court not only proceeded upon such theory, but instructed the jury to regard the statement in the affidavit as part of the evidence in the case, ''as though Charlie Yan Tie had in open court as a witness so testified.''

The evidence on the part of the prosecution tended to show that the alleged act of sexual intercourse took place about 7 o'clock of the evening of September 26, 1905. Lillie Ida Davis so testified. In cross-examination the defendant's counsel asked her the following question: ''Q. Now, is it not a fact that on the twenty-sixth day of September last, at 7 o'clock in the evening, you had venereal and running sores on your private parts, in your vagina and on the lips thereof?'' The district attorney objected to the question as irrelevant, immaterial, incompetent and not proper cross-examination. The court sustained the objection, to which ruling defendant duly excepted. The ruling of the court was erroneous. Dr. McMahon, a witness for the prosecution, tes-

tified that he examined the girl in October, 1905, and that she was then suffering from venereal disease. In fact, the evidence shows without contradiction that she had such disease early in October, 1905. Defendant testified that he never at any time had sexual intercourse with Lillie Ida Davis, and that he had never had any kind of venereal disease in his life. Dr. Cothran, a graduate of the medical department of the University of California, testified that he examined defendant about two weeks before the trial for any evidence of any variety of venereal disease; that he examined physically all the parts affected in such cases, and that defendant had never had chancroids (the disease from which the girl was suffering). The evidence shows that in most cases a male having sexual intercourse with a female suffering from venereal chancroids would contract the disease. Now, if defendant had no venereal disease, and never had chancroids, it seems to us that it was very material as to whether or not the girl, with whom he is alleged to have had sexual intercourse, was suffering from venereal disease on the day of such alleged intercourse. What reason was there for excluding the evidence? The prosecution apparently desired to prove that in October, 1905, the girl was suffering from chancroids. This might, and was probably intended to, carry with it the inference that she contracted the disease from the defendant on the twenty-sixth day of September. Defendant had the right to meet this inference by showing that she had such disease on the twenty-sixth day of September. He further had the right to prove, and did prove, that he had never had such disease. Upon all the facts thus proven the jury had the right to determine the guilt or innocence of defendant. The court refused to allow any evidence as to whether or not the girl was suffering from the disease on the twenty-sixth day of September. The objection of the district attorney was sustained to a similar question asked of Eliza, the sister of the girl. Eliza was asked the direct question as to whether or not Lillie had chancroids, or running sores, on her private parts on the twenty-sixth day of September, 1905, but under the objection of the district attorney she was not permitted to answer it. The mother of the girl testified that she had chancroids on the twenty-sixth day of September, 1905; but it

appearing on cross-examination that the mother only knew. it by Eliza telling her, the court, on the motion of the district attorney, struck out the testimony. The rulings of the court in this regard were highly prejudicial to defendant.

Other rulings are complained of which appear to be erroneous, but which it is not necessary to discuss in detail. The defendant's attorney asked Lillie Ida Davis in cross-examination if she had had intercourse with anyone else in the past year. Upon objection of the district attorney, the court refused to allow the question to be answered. She was further asked by defendant's attorney if she had not had sexual intercourse with a great number of Chinamen in her bedroom at her home during the past year. The court sustained the objections of the district attorney to this line of questions. The defendant's attorney then asked questions as to particular named Chinamen and as to dates prior to September 26, 1905; but the court made the same ruling excluding the evidence. While the facts sought to be elicited by these questions would not justify the defendant in having sexual intercourse with a girl under sixteen years of age as a matter of law, yet they were competent for the purpose of aiding the jury in arriving at the main facts. If the fact that the girl was suffering from a venereal disease a short time after the alleged act of intercourse was a circumstance tending to corroborate the girl's testimony as to the act with defendant, by raising an inference that the venereal disease was communicated by defendant, the defendant, in that spirit of fairness which should prevail in all trials, should have been permitted to show that the girl might have been diseased by sexual intercourse with others. Or it might be that defendant could have shown that the girl was mistaken in his identity, and that it might have been some other Chinaman. The evidence sought to be elicited by the questions would have tended to show the credibility of the girl. If she had been having promiscuous sexual intercourse with Chinamen, or if she had been diseased by sexual intercourse with others prior to the date when it was shown that she had such disease, the jury had the right to consider these matters. We do not think the conviction of the defendant, under the circumstances of this case, was so

5 Cal. App.—38

important that everything else except the single fact should have been excluded from the jury. The district attorney in his zeal desired the case to be presented to the jury upon evidence as to the one act with defendant, and the corroborating fact of the girl having a venereal disease. Such facts alone would give him a beautiful theory as to the defendant's outrage upon an innocent girl of tender years, and his giving her a venereal disease; but the defendant had some rights. If the girl was suffering from a venereal disease on September 26th, and defendant never had such disease, it is a strong circumstance in favor of the testimony of defendant. If the girl was entertaining a great number of Chinamen in the same manner, it was very important for defendant to show that she may have been mistaken as to his identity. It was said in *People* v. *Howard,* 143 Cal. 316, [76 Pac. 1116] (a similar charge to this), "The light of investigation should have been permitted to fall upon the witness, her statement and her conduct. If she was testifying to the truth, such investigation would not have injured the cause of the prosecution. If she was testifying to a falsehood, the defendant should have been allowed in every reasonable way to show it."

In a concurring opinion by the chief justice it was said that if the prosecuting witness made no outcry or complaint to others, or if she was induced by threats of imprisonment to make the accusation, the jury had the right to take these facts into consideration in determining her credibility. The court in the case at bar refused to hear evidence that the witness made no outcry. The defendant's counsel endeavored to prove by cross-examination of the prosecuting witness that ever since she was placed in jail, October 16, 1905, no one was permitted to see her except the sheriff and his deputies, the district attorney and his deputies and detectives. The court, under the objection of the district attorney, would not allow the testimony. It seems to us that such testimony should have been allowed, and would affect the credibility of the witness. That a prosecuting witness of tender years was in a case like this kept in the sole custody and control of the officers of the law, and permitted to see no one else, is a circumstance that the jury should have known. Every

lawyer and every judge under such circumstances would at once infer that the witness was testifying under the influences that had been surrounding her.

Sam Chew was called, and testified for the defendant. Under defendant's express objection and protest the district attorney was allowed to ask the witness many insulting and immaterial questions on cross-examination. Among these the district attorney asked the witness if he had not heard in Chinatown that the defendant was taking little white girls down there, and was warned that he would get into trouble if he continued it; if he had not heard that the members of the Hop Sing Tong accused defendant of producing white girls there; if it was not a fact that witness was conducting a lottery on First street back of Bachigalupi's cigar store; if witness was not selling lottery tickets at such place; if he was not running a poker game at the same place; if witness was not selling lottery tickets and running a poker game up to the time the grand jury before last began to investigate those things. We can conceive of no reason why such questions should have been allowed. It is true that the witness denied that any of the matters were true that were implied by the questions, but that does not cure the error. The district attorney did not attempt to prove the truth of any of the many things implied by the questions. They may have entirely destroyed the effect of the testimony of the witness, and, more than that, they may have created the belief that defendant was in the habit of seducing young girls. A witness cannot be impeached by evidence of particular wrongful acts except it may be shown that he has been convicted of a felony. (Code Civ. Proc., sec. 2051.) A witness need not give an answer which will have a tendency to degrade his character, unless it be to the very fact in issue, or to a fact from which the fact in issue would be presumed (Code Civ. Proc., sec. 2065). Not only this, but a witness has the right to be protected from irrelevant, improper or insulting questions (Code Civ. Proc., sec. 2066). The above provisions of the code apply alike to all witnesses; whether the witness be a Chinaman, a negro, one in the most humble walks of life or one in high position, the rule is the same.

It is not necessary to consider other questions raised in the briefs.

The judgment and order are reversed.

Kerrigan, J., concurred.

Hall, J., concurred in the judgment.