[Crim. No. 295.  Third Appellate District.—May 21, 1915.]

THE PEOPLE, Respondent, v. J. M. BURROWS, Appellant.

CRIMINAL LAW—RAPE—IMPEACHMENT—INTIMACY WITH OTHERS.—In a prosecution for rape the complaining witness cannot be impeached by questions addressed to her upon cross-examination as to her improper relations with persons other than the defendant.

ID. — RAPE OF DAUGHTER BY FATHER — DISOBEDIENT CHARACTER OF PROSECUTRIX.—In the prosecution of a father for rape upon his own daughter, proof that the latter was a disobedient and willful child is inadmissible without first showing her general conduct.

ID. — INFLUENCE OF PROSECUTRIX OVER SISTER — CONCLUSION OF WITNESS.—A question addressed to a witness as to whether she knew if the prosecutrix had any influence over the latter's younger sister is improper, as it calls for the conclusion of the witness.

ID.—FIRST ACT OF INTERCOURSE—CROSS-EXAMINATION—DEFENDANT NOT PREJUDICED.—The defendant in such a prosecution is not prejudiced by a question, objectionable in form, calling for the time when the prosecutrix first told the witness that her father had had sexual intercourse with her, where he himself elicited the statement on cross-examination of the witness that the prosecutrix had so charged her father.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—TIME FOR PROCURING AFFIDAVITS.—An order refusing the defendant sixty day's time within which to secure affidavits in support of his motion for a new

trial is not erroneous, in the absence of any showing of what was expected to be set forth in the affidavits or of any reason why the affidavits had not already been secured.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. J. A. Plummer, Judge.

The facts are stated in the opinion of the court.

D. P. Eicke, and Ben Berry, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—Appellant was convicted of statutory rape and the appeal is from the judgment and order denying his motion for a new trial. It is not claimed that the evidence is insufficient to support the verdict but reliance is had for a reversal upon certain alleged errors of the trial court which we notice in the order presented by appellant.

1. It seems hardly necessary to notice the rulings of the court sustaining an objection to various questions asked of the prosecutrix on cross-examination as to the wayward conduct of the girl. The following will show their nature: "Did you have any trouble with Mrs. Hall out there on the Davis Ranch?" "While you were out there, did you and a young man who was employed there, or near there, go out in the trees, or in the bushes, behind the cook house?" "Did you follow an Italian around through the grapes from place to place while you were on that ranch?" These questions and others like them were not within the proper scope of cross-examination and, besides, it is clear that the character of a witness cannot be impeached in that manner. It is stated by appellant that "we are not unmindful of the rule that if the purpose of the same was to show the want of chastity of the witness it would be incompetent and immaterial and the rulings complained of would in no wise prejudice .the rights of defendant, but there are many exceptions to the rule and the record of this case seems to clearly disclose that it comes within the exceptions." To support his position he cites *People* v. *Fong Chung,* 5 Cal. App. 587, [91 Pac. 101]; *People* v. *Mitchell,* 5 Cal. App. 45, [89 Pac. 853]; *People* v. *Davenport,* 13

Cal. App. 632, [110 Pac. 318] ; and *People* v. *Currie,* 14 Cal. App. 67, [111 Pac. 108].

In the first of these the question addressed to the witness as to whether she had a venereal disease at the time she claimed the offense was committed was proper for the reason that the prosecution had sought to create the inference that the disease was the result of her intercourse with the defendant. Her condition, in other words, was claimed to be evidence of the defendant's guilt and, therefore, it was manifestly open to him to show that she did not contract the disease from him but from another source.

In the Mitchell case this was the question to the prosecutrix : "Was there any inducement or threat held out or made to you to get you to sign the complaint against Mitchell?" and it was very properly held by the district court of appeal for the first district that "the question was admissible under section 1847 of the Code of Civil Procedure, to show motive."

The situation in *People* v. *Davenport* was similar to that in *People* v. *Fong Chung* and the evidence was admissible to rebut an inference of guilt from a fact brought out in the direct examination. The same may be said of *People* v. *Currie,* 14 Cal. App. 67, [111 Pac. 108].

No such condition existed here in the court below when said interrogatories were proposed. On her direct examination the prosecutrix, detailing the circumstances, testified that the defendant had sexual intercourse with her and, manifestly, with that claim and contention there would be nothing inconsistent in the fact that she may also have had like intercourse with another. It may be that if she had been similarly interrogated after the physician had testified as to the anatomical evidence of coition this line of inquiry would have been proper to rebut the inference that defendant was responsible for her condition, but that course was not pursued. Even then, in fairness to the trial court, the purpose of the questions should have been stated.

We can see nothing here to make inapplicable the doctrine stated in *People* v. *Harlan,* 133 Cal. 20, [65 Pac. 10], as follows: "The court sustained objections to several questions asked by defendant's counsel on the cross-examination of the prosecutrix, intended to show that one of the houses that the prosecutrix visited with defendant was of ill repute, and that she knew of its character. It is claimed that the answers to

these questions would have tended to test the credibility of the prosecutrix. The questions were not proper on the ground stated, or any other ground. Questions in cross-examination, tending to show the general immorality of the witness, or specific acts of immorality, should never be allowed in any case for the mere purpose of discrediting or impeaching the witness. (Citing cases.) Nor can the immoral character of a witness, or specific acts of immorality, be shown by independent evidence for the purpose of impeaching a witness. The Code of Civil Procedure (secs. 2051 and 2052) prescribes the method of impeaching witnesses, and they can be impeached in no way other than therein provided. (*People* v. *Johnson*, 106 Cal. 289, [39 Pac. 622].)''

We may remark, also, that the witness was subsequently questioned as to her intimacy with other persons and she positively denied ever having improper intercourse with any one other than defendant. Hence the defendant obtained the full benefit that he sought by said line of inquiry.

2. What has been said should be a sufficient answer to the criticism of the court's ruling as to these questions asked of his housekeeper by defendant: ''Did you have trouble with May?'' ''For acting in a disobedient manner?'' It was stated by appellant that he sought to show that ''she is a disobedient and willful child.'' Her character in that respect, however, was not material to the issue and the method attempted to prove it is condemned by the authorities. Of course, it was proper for appellant, if possible, to show that the prosecutrix was moved to make this serious charge against her father by reason of *animus*, and as tending to support such theory evidence that he ''had remonstrated with her, reprimanded and at times punished her severely''—quoting the language of appellant—might have been admissible but, assuredly, it is not true that ''he could not do this until he had shown her general conduct.'' It may be said, also, in this connection that the prosecutrix herself testified without objection that her father had given her an ''awful beating,'' and hence appellant had before the jury the fact which he claims he should have been permitted to show as evidence of her *animus*.

3. There was no error in the ruling sustaining an objection to the following question asked of Mrs. Johnson: ''Do you know if May had any influence over her sister Ida?'' It is not

important whether the district attorney made the objection on the right ground if the ruling can be sustained for any reason. The question clearly called for a conclusion which it was not the province of a witness to state. The proper course was to ask for facts from which the jury might draw the inference that the younger sister was influenced by the older and, it may be said, appellant immediately proceeded, under the sanction of the court, so to interrogate the witness by asking such questions as, ''While out on the ranch, were Ida and May together a great deal of the time?'' and ''They were chums, you might say?''

After a careful reading of the whole record we cannot say that appellant was unduly restricted in the examination of any witness either for the prosecution or defense. Of course, it is true, in this class of cases especially, that the defendant ''should be given the full measure of every legal right in an endeavor to maintain his innocence.'' (*People* v. *Baldwin*, 117 Cal. 249, [49 Pac. 187]), but it seems to us that the learned trial judge was mindful of the principle throughout the trial of the cause.

4. Another ruling of which appellant complains occurred while Mrs. Frazier was testifying, and it is shown by the record as follows: ''Q. When is the first time that she told you that her father had had intercourse with her? Mr. Eicke: Objected to on the ground it is incompetent, irrelevant and immaterial. The Court: Objection overruled.'' Appellant cites *People* v. *Wilmot*, 139 Cal. 105, [72 Pac. 839], wherein it is stated: ''The rule enunciated by the authorities generally, and by all the decisions in this state, is in all cases to admit evidence of the fact of complaint, and in no case to admit anything more; for, as said by Greenleaf, 'The evidence when restricted to this extent is not hearsay, but in the strictest sense original evidence. When, however, these limits are exceeded, it becomes hearsay in a very objectionable form.' It is clear that to allow any mere statement of the prosecutrix as to the details of the affair, or as to the name of the person accused by her to be given in evidence, would be to allow hearsay evidence to prove this offense.'' The questions objected to in the Wilmot case were: ''Did she say whether or not this defendant had had sexual intercourse with her?'' and ''Did she say that he had?'' It is to be observed that the question here simply calls for the *time* when a certain conversation took

place, but the form of the question is objectionable in assuming that she had made said damaging statement.

But, if the question standing alone is objectionable, it is quite obvious that the ruling could not have prejudiced appellant. This follows for the reason that the cross-examination of the witness by appellant virtually elicited the statement that the prosecutrix had so charged her father. The jury, we think, could have drawn no other inference. In other words, as to the character of the statement, the question objected to was but a repetition of what had been brought out by appellant. These questions and answers appear in said cross-examination: "Q. You believe he has been bad? A. Yes, I do. Q. Have you discussed this case, this charge against him, with May since she has been in your house? A. Against him? Q. Yes. A. May has told me her story. Q. Well, have you discussed it? A. Yes, sir. Q. Did you lodge a complaint with the district attorney against him? A. I did. Q. Did you know anything at all about the facts when you did that? A. I knew what she told me about it. Q. That is all you knew, and you relied upon her word, did you not? A. Yes, I did."

We think the foregoing would leave the jurors in no doubt as to the nature of the statement to which the witness referred and that they would draw no additional inference from the said question asked by the district attorney.

5. We can perceive no merit in appellant's complaint as to the action of the court in refusing a continuance of sixty days for the hearing of a motion for a new trial. The proceedings appear to have been as follows: "On the 22nd day of December, 1914, at 10 o'clock A. M., which was the date and time previously set by the court for pronouncing judgment, the defendant with his counsel appeared and before judgment was pronounced, moved the court to grant defendant a new trial, one of the grounds of which was 'that new evidence has been discovered material to the defendant and which he could not with reasonable diligence, have discovered and produced at the trial.'

"That at the time said motion was made and before said motion was submitted, counsel for defendant asked for sixty days' time within which to secure affidavits in support of his motion for a new trial, which request was by the court denied."

Appellant, quoting section 1181 of the Penal Code that "if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as under all the circumstances of the case, may seem reasonable," contends that the court had no discretion in the matter but was under legal compulsion to grant the request. This appears to us to be a very unreasonable construction of the statute. Even if *may* be construed as *must*, according to the contention of appellant, then the court should grant a continuance for the time that may seem *to the court* reasonable and not as it may seem reasonable to the appellant for a continuance. Manifestly, the court is called upon to exercise its judgment as to whether a defendant is entitled to a continuance and if so for what period of time and whether such continuance will promote justice. But, in the absence of any showing that it will enure to the benefit of the defendant or be likely to right some wrong that may have been done him, how can the court say that any continuance should be granted? This cannot be assumed from the mere application for a delay. There must be some evidence offered in support of the application. Here the bald request was made of the court without any pretense of evidence or suggestion of any fact that would indicate the justice or propriety of granting the motion. There was no intimation of what was expected to be set forth in said affidavits, nor was any reason shown why the affidavits had not already been secured. However, the matter seems so simple that further comment is deemed uncalled for.

We think the judgment and order should be affirmed and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 21, 1915, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 19, 1915.